### HOLLAND BANKING COMPANY *v.* HEARN.

Opinion delivered January 11, 1915.

SALES—STALLION—TERMS OF CONTRACT.—Under the terms of a contract for the sale of a stallion, the seller guaranteed the stallion to be a sure breeder, and provided that if he did not prove satisfactory because of not being a sure breeder the purchaser should deliver him to the seller by March 1, 1911. The sale was made on April 18, 1910. In an action on purchase money notes, it was prejudicial error to submit to the jury the issue, whether the contract was unreasonable and unconscionable in its terms, as the purchaser knew about the breeding of horses, and the period for determining the value of the stallion as a breeder, was agreed to by the purchaser with knowledge of the facts.

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

This suit was instituted by appellant against the appellees upon certain promissory notes given for the purchase money of a certain stallion. The execution of the notes is not denied by the appellees. They denied that appellant was the innocent holder of the notes, and set up in their answer that the notes were obtained by fraud in this. That the agent of the Holland Stock Farm who negotiated the sale procured the signatures of the appellees to the notes representing that neither he nor his principal, the Holland Stock Farm, had sold or would sell or place a similar stallion or a stallion of any kind within a radius of twenty-five miles of Greenwood, and that by way of further inducement the agent contracted with the appellees "that the stallion purchased was a sure foaler and would foal at least seventy-five per cent of the mares which he served;" that these agreements were part of the consideration which moved

the appellees to sign the notes, and but for such contracts they would not have purchased the horse and signed the notes; that they so stated to the agent of the Holland Stock Farm at the time; that they were deceived and misled by these representations, which were untrue; that at the time of the sale and the execution of the notes in suit the agent had already sold and placed a stallion of similar character at Midland and within a few days thereafter sold and placed similar stallions at other places in violation of the agreement and representations; "that by virtue of said false and fraudulent representations so made by said agent, he fraudulently obtained their signatures to the notes as aforesaid."

The testimony on behalf of the appellants tended to prove that the notes in suit were executed April 18, 1910; that the owner of the Holland Stock Farm sold same to the appellant for the face value thereof, less the accumulated interest, on the 17th of September, 1910.

Charles Holland, who was the owner of the Holland Stock Farm and of the notes in suit, stated that at the time he sold the notes to the appellant he was one of the directors of appellant and a brother-in-law of the cashier, but that, although an officer of the bank, his relation was merely nominal. He did not attend the board meetings, and the stock carried in his name was never delivered to him.

The notes were introduced in evidence, and also a guaranty contract between the Holland Stock Farm and appellees. This contract, after reciting the sale, specified: "We guarantee the above named stallion to be a satisfactory sure breeder provided the said stallion keeps in as sound and healthy condition as he now is and has proper care and exercise. If the above named stallion should fail to be a satisfactory sure breeder with the above treatment, we agree to replace him with another stallion of the same breed and price upon delivery to us at our stables at Springfield, Missouri, of the above

named stallion in as sound condition as he is at present by March 1, 1911.''

W. B. Sanford testified that he was cashier of the appellant, and that the notes in suit were acquired by the appellant before any of them were due, the appellant paying therefor their face value; that appellants had no notice of any infirmity in the paper and acquired the same in good faith; that the Holland Banking Company, at the time of the purchase of the notes by it, was not in any way interested in the Holland Stock Farm.

The notes were indorsed, ''Without recourse. Holland Stock Farm, by Chas. Holland, proprietor.''

There was testimony on behalf of the appellees, introduced over appellant's objection, tending to prove that at the time of the sale of the horse the agent of the Holland Stock Farm represented to the appellees that they had not placed another horse in the county of Sebastian, and would not do so; that they at that time had already placed a similar horse at Midland, in Sebastian County, and they had later placed horses at Bonanza and Barling in Sebastian County, and at Charleston, in Franklin County, all within twenty-five miles of Greenwood; that but for these representations, made by the agent of the Holland Stock Farm, appellees would not have signed the notes in suit.

Among other instructions, the court gave, on its own motion, the following:

''A contract which is unreasonable and unconscionable in its terms is void; and, if you find from the evidence in the case that the contract of guaranty introduced in evidence was unreasonable and unconscionable by reason of its terms in requiring a return of the property before it was possible in the course of nature in breeding animals of the horse species to determine the qualities of this animal ascribed to him in said contract of guaranty; and, if you so find, then you will be at liberty to disregard said contract. And if you should further find that after sufficient time had expired in the course of nature for defendants to determine the qualities of

said animal ascribed to him in said contract of guaranty as a sure foal-getter, and find that said animal failed to possess the qualities ascribed to him in said contract of guaranty, and the defendants immediately thereafter offered to return him, this would constitute a compliance on their part with that part of their agreement.''

The verdict and judgment were in favor of appellees, and this appeal has been duly prosecuted. Other facts stated in the opinion.

*L. E. Mefflin,* for appellant.

1. Appellees provided their own remedy by contract and have failed to exercise it and can not now complain. 101 S. W. 1179; 138 *Id.* 635; 97 *Id.* 18; 157 *Id.* 390; 166 *Id.* 953.

2. All *oral* representations were merged into the written contract. 138 S. W. 635; 158 *Id.* 500; 83 Ark. 283; 165 S. W. 637; 166 *Id.* 953.

3. Oral testimony can not be introduced to vary the terms of a written contract. 95 Ark. 131; 154 S. W. 1140; 158 *Id.* 500; 157 *Id.* 390; 141 U. S. 510; 80 Ark. 505; 94 *Id.* 130; 153 U. S. 233; 61 Ark. 86; 165 S. W. 637. Hence instruction No. 1 should have been given.

4. Appellant is an innocent purchaser of the notes, before due and for a valuable consideration. 94 Ark. 100; 61 *Id.* 81; 166 S. W. 943; 166 S. W. 953.

5. The fact that Charles Holland was an officer in the bank does not affect the good faith of the acquisition of the note.   149 S. W. 845; 154 *Id.* 512; 157 *Id.* 142; 5 Cyc. 461-C, 463-C; 166 S. W. 953.

6. Notice to the bank must be proved. 10 Cyc. 1063; 5 *Id.* 461-C; 65 *Id.* 543; 166 S. W. 953.

*Holland & Holland,* for appellees.

1. Appellant was not an innocent purchaser. 122 Am. St. 1017; 136 Iowa 390; 15 Am. & E. Ann. Cases, 665; 82 Ark. 86; 95 *Id.* 144; 145 S. W. 707-9; 105 Ark. 136.

2. The notes were secured by fraud. Jones on Ev. (2 ed.) 547; 2 Enc. of Ev. 498; 87 Ark. 614; 75 *Id.* 79.

3. The contract is unconscionable and the remedy provided in the contract is not exclusive. 132 U. S. 406; 33 L. Ed. 93.

WOOD, J., (after stating the facts). The court erred in submitting to the jury the issue as to whether the guaranty contract was unreasonable and unconscionable in its terms. This was not an issue, under the evidence, proper for the jury to pass upon. The terms of the contract were ambiguous and its construction was for the court and not the jury. Moreover the conditions in the contract which appellees claim rendered the same unreasonable and unconscionable were not so in fact or in law. The seller of the horse had the right to guarantee the horse to be a sure breeder and to exact that if he did not prove satisfactory to the purchasers because of not being a sure breeder that the purchasers should deliver him to the stables of the seller at Springfield, Missouri, by the 1st of March, 1911, as specified in the contract. There was nothing in the language of this provision to warrant the court in submitting to the jury to determine the question as to whether the contract was unreasonable and unconscionable, and certainly there was nothing in this language itself to warrant the court in declaring as a matter of law that it was an unreasonable and unconscionable contract because of such stipulation. The parties were dealing at arms length. If the time fixed by the contract for the return of the horse did not give appellees time in the course of nature to test his breeding qualities and to determine whether he was satisfactory to them, appellees should have demanded a longer time in which to make such test. They had the same knowledge of the period required for gestation in animals of the equine species as the agent of the Holland Stock Farm had. The purchasers were bound by the common knowledge of the required period for gestation the same as the seller. It is not pretended that the seller of the horse practiced any deception or

fraud upon the appellees by which the time for the return of the horse, in case he proved unsatisfactory, was fixed. As above stated, there is nothing in these terms themselves to show that they were unreasonable and unconscionable, and the appellees could not prove by oral testimony that they were unreasonable and unconscionable by showing that according to the time of gestation in animals of the horse species the time specified in the contract for the return of the horse was too short to test his breeding qualities. The instruction was, therefore, abstract, misleading and prejudicial.

Appellant contends that the undisputed evidence shows that the appellant was an innocent purchaser of the notes in suit, and that, therefore, the court erred in submitting that issue, and in also permitting testimony to be introduced tending to show fraud in the exection of the notes. Inasmuch as the case must be reversed for the error in giving the instruction above mentioned, and since the cause must be remanded for a new trial, we will not pass upon the issue of fact as to whether the evidence was sufficient to sustain the verdict of the jury on the finding that appellant was not an innocent purchaser and also on the issue as to whether or not fraud entered into the sale and the execution of the notes. These issues will be left open for such development as may be had on a new hearing.

For the error indicated the judgment is reversed and the cause is remanded for a new trial.